**Brian DEWBERRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1231–87.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 13, 1989.

Gary A. Udashen, Dallas, for appellant.

John Vance, Dist. Atty. & Kathi Alyce Drew, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Brian Dewberry, appellant, was convicted of murder and sentenced to fifteen years' confinement in the Texas Department of Corrections. The Dallas Court of Appeals affirmed the conviction in a published opinion. *Dewberry v. State,* 743 S.W.2d 260 (Tex.App.—Dallas 1987).

We granted appellant's petition for discretionary review on two grounds to determine: (1) whether the Court of Appeals erred in finding that appellant failed to establish a prima facie case of racial discrimination by the prosecutor in the use of his peremptory jury strikes and (2) whether the Court of Appeals erred in overruling appellant's points of error challenging the constitutionality of the jury charge concerning the law of parole and good conduct.

At the present time we consider only ground for review number one.

Because the trial court did not have the benefit of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), at the time of voir dire, the Court of Appeals abated appellant's appeal and remanded the case to the trial court to conduct a *Batson* hearing. See *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (*Batson* requirements apply retroactively to cases pending on direct appeal or not yet final). Following reinstatement of the appeal, the Court of Appeals affirmed the trial court's determination that appellant failed to make out a prima facie case of racial discrimination.

The trial court's conclusions of law embodied its finding that appellant failed to make out a prima facie case. The trial court found:

"1. Defendant is a member of the black race, a cognizable racial group.

"2. The State exercised peremptory challenges to remove from the venire panel some members of the Defendant's racial group.

"3. *No facts or other relevant circumstances raised an inference that the State used peremptory challenges to ex-*

*clude, from the panel, members of Defendant's racial group solely on account of their race, or on account of the Defendant's race.*

"4. The State offered racially neutral explanations for the exercise of all of its peremptory challenges.

"5. Defendant has failed to demonstrate purposeful discrimination on the part of the State in its use of peremptory challenges to exclude members of Defendant's race from the jury."[1] (emphasis added)

In *Batson* the United States Supreme Court held that the Equal Protection Clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as a defendant, as a group, will be unable impartially to consider the State's case against that defendant. In order to prove a case of racial discrimination the Supreme Court stated:

"To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must *show that these facts* and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." *Batson* 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted and emphasis added).

This court has previously discussed the quantum of evidence necessary to establish a prima facie case of discrimination. In *Tompkins v. State*, 774 S.W.2d 195 (Tex. Cr.App.1987) cert. granted —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 919 (1988), judgment affirmed by equally divided court, —— U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), Judge Teague, writing for the majority, stated:

"A prima facie case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. The party with the burden of proof must produce at least this much evidence to avoid a finding that the allegation is not true as a matter of law. Once produced, however, the allegation must be found true unless it is contradicted, impeached, or rebutted by other evidence...." (footnote omitted) *Tompkins*, 774 S.W.2d at 201.

The *Tompkins* analysis of a prima facie case was supported by reference to footnote 18 of the *Batson* opinion. See *Tompkins*, 774 S.W.2d 195, 201, citing *Batson*, 476 U.S. at 94 n. 18, 106 S.Ct. at 1721 n. 18. That particular footnote referenced several Title VII cases that contain an explanation of the prima facie case in a discrimination setting. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In one of those cases, *Texas v. Burdine*, the Supreme court stated:

"*The burden of establishing a prima facie case of disparate treatment is not onerous* .... The prima facie case serves an important function in the litigation: it eliminates the most common non-discriminatory reasons for the plaintiff's rejection.... [T]he prima facie case

---

1. The trial court tacitly recognized that appellant had established a prima facie case. Our conclusion is based on a careful reading of the trial court's conclusions of law. The State articulated racially neutral reasons for striking black jurors. As *Batson* teaches, only after the defen-

dant has established a prima facie case of discrimination does the burden of proof shift to the State to articulate racially neutral reasons for peremptory strikes. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1094 (emphasis added) (citations and quotations omitted).

Applying the minimum quantum of evidence standard and recognizing that the initial burden in establishing a prima facie case is not onerous we turn to an examination of the facts that led to the trial court's findings of fact and conclusions of law. As the Court of Appeals noted, the record reveals:

> "[T]hat appellant is black, the victim of the offense was white, and both of the State's primary witnesses were white. Appellant and the State were each allotted ten peremptory strikes following the voir dire of the jury panel. The State peremptorily struck five of the six potential black venirepersons and used its remaining five strikes on whites. Appellant peremptorily struck ten white venirepersons. The jury consisted of eleven white jurors and one black juror." *Dewberry,* 743 S.W.2d at 265.

With these facts in hand the trial court ruled that appellant had met the first two requirements of the *Batson* test but failed to show facts or other relevant circumstances raised an inference of purposeful discrimination. The Court of Appeals affirmed these findings choosing to ignore the fact that the prosecutor had struck five of six black veniremen on the panel. The Court of Appeals reasoned that the prosecutor's use of five of ten peremptory strikes on blacks and one black serving on the jury did not establish a prima facie case of discrimination. *Dewberry,* 743 S.W.2d at 266. In deciding whether the defendant has made a requisite showing the trial court should consider all relevant circumstances, including:

> "[A] 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

The "pattern" may be shown in a number of ways. In *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978), that court noted that the defendant may establish a prima facie case by showing that the State has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of peremptories against the group. *Wheeler,* 583 P.2d at 764, 148 Cal.Rptr. at 905–906. See *Keeton v. State,* 749 S.W.2d 861, 867 (Tex.Cr.App.1988).

In this case the Court of Appeals focused on the total number of strikes used against black veniremen and not the number of blacks actually excluded from the jury. While this mode of analysis may be valid in some circumstances it failed to take into account the result of strikes against jurors of the same race as appellant. The exclusion of five of six blacks from the jury in this case established a prima facie case of discrimination.[2] See *Allen v. State,* 751

---

2. The question of whether a defendant has established a prima facie case is normally not a concern subject to appellate review. In *United States Postal Service Bd. of Govs. v. Aikens,* the United States Supreme Court held:

> "The 'factual inquiry' in Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.' *Burdine,* supra [450 U.S.], at 253, 67 L Ed 2d 207, 101 S.Ct. 1089. In other words, is 'the employer ... treating "some people less favorably than others because of their race, color, religion, sex, or national origin."' *Furnco Construction Corp. v. Waters,* 438 US 567, 577, 57 L Ed 2d 957, 98 S Ct 2943 [2949] (1978), quoting *Teamsters v. United States,* 431 US 324, 335, n 15, 52 L Ed 2d 396, 97 S Ct 1843 [1854 n. 15] (1977). The prima facie case method estab-

lished in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' *Furnco,* supra [438 U.S.], at 577, 57 L Ed 2d 957, 98 S Ct 2943. *Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.* The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.' *Burdine,* supra [450 U.S.], at 253, 67 L Ed 2d 207, 101 S Ct 1089.
> "On the state of the record at the close of the evidence, the District Court in this case should

S.W.2d 931, 934 (Tex.App.—Houston [1st Dist.] 1988, no pet.); *Rodgers v. State,* 725 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

The Court of Appeals erred in affirming the trial court's finding that appellant failed to establish a prima facie case of racial discrimination.

We reverse and remand to the Court of Appeals for proceedings not inconsistent with this opinion.

WHITE, DUNCAN and BERCHELMANN, JJ., concur in the result.

have proceeded to this specific question directly, just as district courts decide disputed questions of fact in other civil litigation.[5]

"Footnote 5: Of course, the plaintiff must have an adequate 'opportunity to demonstrate that the proffered reason was not the true reason for the employment decision,' but rather a pretext. *Burdine,* supra, at 256, 67 L Ed 2d 207, 101 SCt 1089. There is no suggestion in this case that Aikens did not have such an opportunity." (Emphasis added).

The Fifth Circuit has followed *Aikens* in determining the appropriateness of appellate review on the question of whether a defendant has made out a prima facie case in a *Batson* hearing. See *United States v. Forbes,* 816 F.2d 1006, 1010 (5th Cir.1987) (Appellate review should not become bogged down on the question of whether the defendant has made out a prima facie case). Accord *United States v. Lance,* 853 F.2d 1177, 1181 (5th Cir.1988). In this case, however, appellant was denied his opportunity to prove that the State's racially neutral explanations were a pretext because the finding of no prima facie case stopped the fact finding process. See *Keeton,* 749 S.W.2d at 871, n. 1 citing *United States v. Thompson,* 827 F.2d 1254 (9th Cir.1987).